**BURKLE, Plaintiff-Appellant, v. BURKLE, Defendant-Appellee.**

Ohio Appeals, Seventh District, Belmont County.

No. 834.   Decided 1949.

Esther F. Pinsky, A. G. Lancione, Bellaire, for plaintiff-appellant.
James & Jones, Bridgeport, for defendant-appellee.

### OPINION

By PHILLIPS, J.
Plaintiff appealed on questions of law and fact from the following judgment of the court of common pleas entered in

plaintiff's action for divorce from defendant, in which he filed a cross petition seeking a divorce from plaintiff on the ground of gross neglect of duty:—

"Divorce decreed defendant on the grounds of gross neglect of duty. The plaintiff, by way of property settlement, is permitted to keep all of the property of defendant or joint property (except personal belongings of defendant, if any, now in plaintiff's possession), which includes a deposit account, as and for property settlement in full. The sum of $100.00 as additional counsel fees, is hereby awarded. The defendant to pay the costs."

The case from which counsel for plaintiff attempts to appeal to this court is not properly appealable on questions of law and fact. Accordingly defendant's motion to dismiss plaintiff's appeal on questions of law and fact was sustained, and the words "and fact" were ordered stricken from the notice of appeal; and it appearing that a bill of exceptions was duly filed, obviating the necessity of this court granting counsel for plaintiff time within which to file same, the appeal was retained, argued, submitted and will be determined as one on questions of law.

We find no paper writing among the papers submitted to us for review assigning grounds of error, but we learn from the brief filed by plaintiff's counsel, which we interpret as her assigned grounds of error, that she claims that "the judgment of the lower court was unsupported by the evidence and against the manifest weight of the evidence as a matter of law".

The parties, who have no children, were married in 1935, and since then have lived with plaintiff's mother, who owns a dress shop in Bellaire, Ohio, where plaintiff before and continuously since marriage, has been employed, she testified for a time to earn her board and for a time an additional small salary, nothwithstanding the fact that even during service in the armed forces, during which time plaintiff received a government allowance, defendant was able and willing to support her in a home of their own; and notwithstanding an oral pre-nuptial agreement of the parties that plaintiff would continue to work for but two years after marriage, and thereafter would establish their own home and raise a family, which defendant periodically has evidenced a desire to do, but both of which plaintiff has refused to do, claiming that her mother needs her in the operation of her business, and that condition of her health makes it impossible

for her to bear children safely, although she made no effort to ascertain definitely whether that was a fact.

Defendant frankly advised plaintiff before leaving her of his intentions to do so and assigned his reasons therefor, told her he was going to withdraw and did withdraw $325.00 from a saving account of $600.00 accumulated jointly by the parties, bade plaintiff goodbye, left the book evidencing such deposit and keys to the Dress Shop on plaintiff's dresser, took some of his personal belongings and walked out leaving furniture and other personal property for plaintiff.

In the period intervening between separation on January 25, 1946, and the filing of plaintiff's petition on June 5th of the same year plaintiff attempted a reconciliation during conferences with reference to which she stated she would go to China and live in a tent with him, would quit her job, would die for him, and do "anything" for him to save their marriage, but when as we believe from reading the bill of exceptions, which is not too clear nor too easily read nor understood, the reconciliation was consummated, or about to be consummated, she asked him to sign a document in which she repudiated and asked to be relieved of practically all such statements and promises.

There is evidence of statements made by plaintiff to defendant such as "there would probably be lots of young men who would probably envy you," "Howard, haven't I always been good to you, nice to you, what did you ever do for me?"; and to defendant's mother, whom she rarely visited, such as "oh, we have just got everything so nice, and I got him in good society and everything"; which together with the evidence of plaintiff's unfriendly attitude toward defendant's family leads us to believe that defendant might have been led to believe that plaintiff felt she was defendant's superior socially; and evidence that plaintiff "shrug away" from defendant when he placed his arm about her shoulder, and that "it would have been better if he (defendant) had died overseas, wouldn't come back at all, rather like that than go through this" (sic), "listen, you will have a nice reputation to keep. I do too. We have always been considered model persons in the community here, you are a pretty nice fellow", which indicates that plaintiff was unresponsive to defendant's caresses and from all of which defendant could conclude that plaintiff thought more of her social position than she did of her husband and their marriage, which resulted in each of the parties going separate ways, performing separate tasks and living in the house of another.

There is evidence that plaintiff showed a tendency toward hysteria; and there is no doubt in our minds but that due to his war service and long periods of confinement in military hospitals defendant developed a psychotic condition, and his inability to persuade plaintiff. to bear him children and lead a normal life with him frustrated him and aggravated that condition.

Plaintiff testified that defendant "carried me down the steps through all the years" until the night he told her he was going to separate from her.

As said by the trial judge "visualizing the situation from the evidence, this marriage was evidently doomed to failure almost from the beginning. Each party had their separate work; they were without a home of their own, and had no children and no prospects of any, due to the attitude of the plaintiff."

As the result of reading the testimony and considering the evidence introduced in the court of common pleas, submitted to us for revivew, only briefly and sketchily outlined in this opinion, we can not and accordingly do not say that the trial judge, who occupied "the position of the jury in a divorce proceedings", and whose duty it was to determine conflicts of evidence, which he did in defendant's favor, erred to plaintiff's prejudice in any of the respects urged. Our determination of the "issue" as stated by counsel for plaintiff "whether or not the court erred in granting the divorce to the defendant on grounds of gross neglect of duty" is that he did not; and though not urged nor even suggested we believe that there was no evidence of abuse of discretion by the trial judge.

We have referred to the evidence on the question of divorce to the limited extent observed because we believe it advisable to show the backgrounds of the respective parties and their marital troubles for the reason, among others, of showing that the judgment of the court of common pleas was not erroneous on the question of property settlement.

The judgment of the court of common pleas is affirmed.

CARTER, PJ, NICHOLS, J, concur in judgment.